IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| ROBBIE L. GATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:03-CV-0079-BF (R) |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security | § | |
| Administration, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER AND OPINION

Before the Court is Plaintiff Robbie L. Gates's ("Plaintiff") social security appeal.  Plaintiff filed her request for judicial review of her social security case on April 17, 2003.  Defendant Jo Anne B. Barnhart, the Commissioner of Social Security Administration ("the Commissioner"), filed a response on September 9, 2003. Plaintiff filed a brief in support of her request for judicial review on October 6, 2003.  On July 2, 2003 and July 10, 2003, the Commissioner and Plaintiff respectively consented to proceed before the United States Magistrate Judge.   For the reasons stated below, the Court **AFFIRMS** the final decision of the Commissioner.

## BACKGROUND

### A.  Procedural History

On April 20, 2001, Plaintiff filed an application for disability benefits.  (*Pl.'s Br.* at 2.)  The Social Security Administration denied Plaintiff's application for benefits on October 9, 2001. (*Tr.* at 26.)

Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on February 14, 2002.  (*Id.* at 36-37.)  Plaintiff had a hearing before ALJ Linda D. Carter in Tyler,

Texas, on July 15, 2002.  (*Id.* at 329.)  The ALJ determined that Plaintiff has the residual functional

capacity to perform a full range of sedentary work, which is reduced by certain limitations.  (*Id.* at

23.)  On August 16, 2002, the ALJ issued an opinion denying Plaintiff benefits.  (*Id.* at 16-24.)

On October 7, 2002, Plaintiff filed a request for review of the hearing decision.  (*Id.* at 6-12.)

On February 13, 2003, the Appeals Council denied Plaintiff's request for review, thus rendering the

ALJ's ruling the final decision of the Commissioner.  (*Id.* at 4-5.)  Plaintiff filed this social security

appeal on April 17, 2003.

**B.  Factual History**

**1.  Plaintiff's Age, Education, and Work Experience**

At the time of the hearing before the ALJ, Plaintiff was forty-eight years old.  (*Id.* at 2.)

Plaintiff completed school through the eighth grade, and she has no past relevant work experience.

(*Id.*)

**2.  Plaintiff's Medical Evidence**

In Plaintiff's disability report, she claimed that she was unable to work due to diabetes

mellitus, high blood pressure, and depression.  (*Id.* at 2.)  Plaintiff also suffers from hypertension

and rotator cuff tendinitis.  (*Tr.* at 197.)

Plaintiff was diagnosed with diabetes mellitus approximately eighteen years ago.  (*Id.* at

194.)  She has received sporadic treatment for her diabetes because of her inability to afford

continuous treatment.  (*Id.*)  In addition to the lack of medical treatment, Plaintiff has maintained

poor control of her diabetes due to "her lack of adherence to diet and exercise."  (*Id.* at 17.)  The

symptoms Plaintiff claims she has experienced due to her diabetes include: fatigue; pain in her arms,

legs, and left ankle; and decreased vision.  (*Id.* at 194.)  Plaintiff states that she has been hospitalized

for diabetes in Wichita Falls, Texas, and several times in Vernon, Texas, because of poorly controlled diabetes. (*Id.* at 195.)

Plaintiff was diagnosed with hypertension approximately eighteen years ago. (*Id.* at 194.) She has received sporadic treatment for her hypertension. (*Id.*) She has maintained good control of her hypertension and only experienced occasional elevations in blood pressure. (*Id.* at 18.) She was hospitalized once for high blood pressure and hypertension in Chillicothe, Texas. (*Id.* at 195.)

Plaintiff has also been diagnosed with depression and affective mood disorder. (*Id.* at 18.) Plaintiff was hospitalized from December 12, 2001, to December 14, 2001, because of "a major depressive episode and suicidal ideation." (*Id.*) Her depression was diagnosed at that time, and the examining doctor determined that, prior to treatment, she had a global assessment functioning of forty-eight. (*Id.*) During her hospitalization, Plaintiff began taking the anti-depressant Zolof. (*Id.*) Due to the anti-depressant, Plaintiff's depression improved before the hospital discharged her. (*Id.*) Plaintiff states that the effects of her depression include constant sleeping, lack of energy, crying, decreased libido, and increased anxiety. (*Id.*) Her husband and eleven children complete most of the household chores, and Plaintiff leaves the house to go to the grocery store twice a week, accompanied by a family member. (*Id.* at 19.) The only other time she leaves the house is when she goes to the doctor. (*Id.*)

Plaintiff complains of back pain, but most of the pain is in her right shoulder due to the tendinitis in her right rotator cuff. (*Id.* at 194.) She also states that she suffers from arm pain and sharp leg pain. She indicates that Celebrex relieves her body pain, although it does not totally alleviate her pain. (*Id.*) She allegedly suffers from left ankle pain, which is worse when she stands but can be partially relieved by rest or elevation. (*Id.*)

### 3. Plaintiff's Hearing Before the ALJ

Plaintiff had a hearing on July 15, 2002, in Tyler, Texas. (*Id.* at 331.) Plaintiff appeared in person, and attorney Robert C. Hardy ("Hardy") represented her at the hearing. (*Id.*)

The hearing began with an opening statement by Hardy. (*Id.* at 334.) The ALJ then examined Plaintiff. (*Id.* at 334-37.) The ALJ questioned Plaintiff about her educational background, condition of her eyes, her height and weight, how she got to the hearing, whether she had worked recently, and about the side effects of her medication. (*See id.* at 335-37.)

Hardy then examined Plaintiff. (*Id.* at 337-49.) He questioned Plaintiff about her work history, and Plaintiff revealed that she had no past relevant work. (*Id.* at 337-38.) Plaintiff indicated the conditions from which she suffers, including diabetes, high blood pressure, depression, pain in her feet, and pain in her arms. (*Id.* at 338-39.) She said that she had been undergoing physical therapy for pain in her right arm for two months. (*Id.*) She stated that she takes insulin and checks her blood sugar on a daily basis. (*Id.* at 340.)

Hardy questioned Plaintiff about the side effects of her diabetes. (*Id.* at 340-41.) Plaintiff explained that she would most likely have to undergo eye surgery due to her diabetes. (*Id.* at 341.) She said that diabetes causes her feet to swell and that she frequently keeps her feet elevated to prevent swelling. (*Id.*)

Hardy then asked Plaintiff about the treatment and side effects of her depression. (*Id.* at 341-45.) She indicated that she had been hospitalized and takes medication for her depression. (*Id.* at 342.) She said that the sleeps most of the time during the day and that her family helps her with her personal grooming. (*Id.*) She said that she no longer pursues any hobbies and rarely leaves the house. (*Id.* at 343-44.) She stated that she takes medication for her depression sporadically because

she cannot always afford it.  (*Id.* at 345.)

Plaintiff also said that she has arthritis in her hands, which causes frequent cramping in her hands.  (*Id.* at 345-46.)  She stated that the cramping caused by the arthritis causes her to drop things.  (*Id.* at 346.)

Plaintiff next described the pain in her heels and the related side effects.  (*Id.* at 346-47.) Plaintiff said that the most she can walk is around her house and yard and that she can only stand for fifteen or twenty minute intervals.  (*Id.* at 347.)  She said that she can sit for unlimited time periods as long as she can elevate her feet.  (*Id.*)  She said that she can lift anything with her right hand and is only capable of limited lifting with her left hand.  (*Id.* at 348.)

As for the complications due to her blood pressure, Plaintiff stated that she frequently becomes dizzy and sometimes falls.  (*Id.*)

The ALJ then questioned the vocational expert, Dr. William Weber ("Vocational Expert"). (*Id.* at 351-57.)  The ALJ asked the Vocational Expert to assume someone of Plaintiff's age, work experience, education, and medical history.  (*Id.* at 351.)  The ALJ also asked the Vocational Expert to assume that the ALJ found that Plaintiff could perform sedentary work in a work environment that: is free of irritants, noxious fumes, dust, smoke, and lint; allows Plaintiff to alternate between sitting and standing every forty-five minutes; does not include significant unprotected heights; does not require moving machinery or commercial driving; is low stress with simple, repetitive instructions; does not have a customer service component; does not require Plaintiff to reach above her chest or shoulder level; and allows Plaintiff to wear comfortable footwear with shoe inserts.  (*Id.* at 352-54.)  Taking into account the above listed assumptions, the ALJ asked the Vocational Expert what number of sedentary, unskilled jobs existed that Plaintiff could perform.  (*Id.* at 354.)  The

5

Vocational Expert responded that approximately 11,692 jobs exist in the state economy and that approximately 166,930 jobs exist in the national economy. (*Id.* at 355.) The Vocational Expert said that the following jobs fit the restrictions outlined by the ALJ: addresser, patcher, and button assembler. (*Id.* at 355-56.) The Vocational Expert further indicated that 1,000 addresser job exist in the state economy and 10,000 exist in the national economy, 800 patcher jobs exist in the state economy and 8,000 in the national economy, and 500 button assembler jobs exist in the state economy and 5,000 exist in the national economy. (*Id.*)

### 4. The ALJ's Findings

In a decision dated August 16, 2002, the ALJ found that the earliest date under consideration for potential payment of supplemental security income payments is April 20, 2001. (*Id.* at 16.) The ALJ found that Plaitiff has no past relevant work experience, is forty-eight year old, and has an eighth grade education, which is defined as a limited education. (*Id.* at 23.)

The ALJ determined that the medical evidence supports that Plaintiff has insulin dependent mellitus diabetes and hypertension but that these impairments, both individually and combined, are non-severe because they do not interfere with her ability to work. (*Id.*) The ALJ also determined that the medical evidence supports that Plaintiff has right rotator cuff tendinitis and a severe depressive disorder. (*Id.*) The ALJ found that Plaintiff's depressive disorder does not meet a listing requirement. (*Id.*)

The ALJ found that Plaintiff has a residual functional capacity for restricted sedentary work. (*Id.*) The ALJ found Plaintiff capable of lifting, carrying, pushing and pulling ten pounds occasionally and less than ten pounds frequently, as well as standing and walking for about two hours each during an eight-hour workday. (*Id.*) The ALJ determined that Plaintiff's residual

functional capacity is reduced by her inability to work around significant, unprotected heights, dangerous moving machinery or to drive commercially. (*Id.*) The ALJ additionally found that Plaintiff requires the option of alternating between sitting and standing at forty-five minute intervals; a climate controlled work environment reasonably free of noxious fumes, dust, smoke and lint; a low stress work environment; simple, repetitive job instructions; and work that does not require customer service. (*Id.*)

The ALJ ultimately concluded that Plaintiff is not disabled, nor was she under a disability as defined in the Social Security Act. (*Id.* at 24.) Although the ALJ concluded that Plaintiff cannot perform a full range of sedentary work, the ALJ determined that a significant number of jobs exist in the national economy that Plaintiff can perform. (*Id.*) These jobs include addresser, patcher, and button assembler. (*Id.*) Accordingly, the ALJ decided that Plaintiff is not eligible for supplemental security income. (*Id.*)

## STANDARD OF REVIEW

To receive social security benefits, Plaintiff must establish that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam). The Social Security Act defines a disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423 d(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity

will not be found disabled regardless of medical findings; (2) an individual who does not have a "severe impairment" will not be found to be disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing the work he or she has done in the past, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him or her from performing his or her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)). The claimant bears the burden of proving he or she is disabled under the first four steps. *Leggett*, 67 F.3d at 564. If at any point during the examination of the first four steps the Commissioner determines the claimant is or is not disabled, the inquiry terminates. *Id.* If the claimant meets his or her burden under the first four steps, the Commissioner then bears the burden at step five to show the claimant is capable of performing other gainful employment available in the national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Commissioner may satisfy this burden by referencing the Medical-Vocational Guidelines of the regulations or by expert vocational expert testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination receives great deference. *Leggett*, 67 F.3d at 564. Title 42, section 405 (g) of the United States Code Annotated limits judicial review of the Commissioner's findings to: (1) whether substantial evidence supports the decision and (2) whether the Commissioner utilized the proper legal standard. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (1999). Substantial evidence is "that which is relevant and sufficient for a reasonable mind

to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564.  The Court does not re-weigh the evidence, retry the issues, or substitute its own judgment for that of the Commissioner.  *Greenspan*, 38 F.3d at 236. Instead, the Court scrutinizes the record to determine whether substantial evidence supports the decision.  *Id.*

## DISCUSSION

Plaintiff alleges that the ALJ did not apply the proper legal standards when determining Plaintiff's residual functional capacity and that substantial evidence does not support the ALJ's determination of Plaintiff's residual functional capacity.  (*See Pl.'s Br.* at 1-2.)  Plaintiff claims the ALJ erred in three ways.  First, Plaintiff claims that the ALJ "failed to evaluate the treating source's medical opinion in accordance with mandatory agency policy."  (*Id.*)  Second, Plaintiff states that the ALJ "assessed presumptive mental limitations based on her own lay speculations."  (*Id.*)  Third, Plaintiff argues that the ALJ "failed to evaluate . . . [P]laintiff's testimony in accordance with the regulations."  (*Id.* at 2.)

## A.  Did the ALJ Give the Proper Weight to the Treating Source's Opinion?

The first issue the Court must determine is whether the ALJ gave Dr. Pierce's opinion the proper weight when determining Plaintiff's residual functional capacity.  Plaintiff states that the ALJ rejected the assessment of Plaintiff's treating physician, Dr. Shawn Pierce ("Dr. Pierce").  (*Id.* at 5.) Dr. Pierce is a family practitioner who has treated Plaintiff since December of 2001.  (*Tr.* at 21.) Dr. Pierce completed a medical assessment of Plaintiff's mental ability to do work-related activities. (*See id.* at 298-300.)  Dr. Pierce determined that Plaintiff has a "fair" mental ability to do the following activities in a work environment: follow work rules, relate to co-workers, deal with the

public, and interact with supervisors.  (*Id.* at 298.)  Dr. Pierce concluded that Plaintiff also has a

"fair" ability to understand, remember, and carry out simple job instructions, to understand,

remember, and carry out detailed but not complex job instructions, and to maintain her personal

appearance.  (*Id.* at 299.) The medical assessment form explains that possessing "fair" ability means

that the "ability to function in this area is seriously limited but not precluded."  (*Id.* at 298.)  Dr.

Pierce determined that Plaintiff has poor or no ability to do the following in a work environment:

use judgment, deal with work stresses, and function independently.  (*Id.*)  In addition, Dr. Pierce

found that Plaintiff has poor or no ability to understand, remember, and carry out complex job

instructions, relate predictably in social situations, demonstrate reliability, and behave in an

emotionally stable manner.  (*Id.* at 299.)  Dr. Pierce ultimately concluded that Plaintiff is incapable

of even low stress jobs and would be absent from work at least four times a month due to her

depression.  (*Id.* at 294, 297.)

Plaintiff asserts that the ALJ should have given Dr. Pierce's opinion "controlling weight."

(*Pl.'s Br.* at 5.)  The ALJ stated that she gave Dr. Pierce's "some weight" by including in Plaintiff's

residual functional capacity a sit/stand option, temperature controlled work environment, low stress

work environment, and no jobs involving customer service.  (*Tr.* at 21-22.)  The ALJ explained that

she could not give Dr. Pierce's opinion "substantial weight" because he is a family practitioner, not

a psychiatrist or psychologist.  (*Id.* at 21.)

The Social Security regulations require an ALJ to give a treating physician's opinion

"controlling weight" if medically acceptable clinical and laboratory diagnostic techniques support

the opinion and if the opinion is consistent with other substantial evidence.  *Martinez v. Chater*, 64

F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).  The ALJ may assign a treating

10

physician's opinion little or no weight if the treating physician's evidence is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

The Court finds that the ALJ's properly determined that Dr. Pierce's opinion should not be afforded "controlling weight" because his opinion was conclusory and not supported by medically acceptable clinical and laboratory diagnostic techniques. Dr. Pierce made determinations about Plaintiff's ability to function in a work environment without providing support for his conclusions or explaining how he reached those conclusions. Dr. Pierce's opinion is not entitled to controlling weight because he did not provide a "medical explanation" for his conclusions. *Martinez*, 64 F.3d at 176 (affirming the ALJ's decision to not give a treating physician's opinion "controlling weight" because he "failed to provide a medical explanation for his opinion"). *See also Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005) (affirming the ALJ's assignment of little weight to the treating physician's opinion because the treating physician did not perform any "clinical examinations"). The only reason Dr. Pierce cited to support any of his conclusions, including the conclusions that Plaintiff was incapable of having even "low stress" jobs and would be absent from work at least four times a month, was that Plaintiff has a severe depressive disorder. *(Tr.* at 294, 297.)

Plaintiff also argues that the ALJ erred because she did not weigh Dr. Pierce's opinion against other medical opinions. (*Pl.'s Br.* at 6.) Plaintiff states that once the ALJ decided not to give Dr. Pierce's opinion "controlling weight," the ALJ should have weighed Dr. Pierce's assessment against "any other medical opinion from a physician who has examined [P]lainitff" and explain the reason for the weight given to his opinion. (*Id.*) The Social Security Regulations require an ALJ to give "good reason" for the weight assigned to a treating physician's opinion. 20 C.F.R.

§ 404.1527 (d)(2).  Section 404.1527 (d)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'"  *Newton*, 209 F.3d at 456; 20 C.F.R. § 404.1527(d)(2).  The factors an ALJ should consider when determining what weight to assign to a treating physician's opinion include: (1) the physician's length of treatment; (2) the physician's frequency of examination; (3) the nature and extent of the treatment of the relationship; (4) the support of the physician's opinion afforded by the medical evidence of the record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527 (d).

The Court finds that the ALJ did not err because the ALJ explained the weight she gave to Dr. Pierce's opinion and why she gave it that weight.  The ALJ did not reject Dr. Pierce's opinion completely.  Rather, she only rejected his contention that Plaintiff could not perform any type of work, due to her depression.  She incorporated many aspects of Dr. Pierce's opinion into Plaintiff's residual functional capacity. (*Tr.* at 21.)  Although the ALJ did not specifically reference the factors, the ALJ did consider the factors listed in 20 C.F.R. § 404.1527(d).  When determining Plaintiff's residual functional capacity, the ALJ stated that she considered the opinions of the state medical consultants, who determined that Plaintiff could work at a medium exertion level, and the ALJ discussed the Plaintiff's medical history.  (*Id.*)  The ALJ also explained how long Dr. Pierce has been treating Plaintiff.  (*Id.*)  The ALJ stated that she ultimately declined to give Dr. Pierce's opinion substantial weight because he is a family practitioner, not a psychologist or psychiatrist.  (*Id.*)  The Court, therefore, rejects Plaintiff's arguments that the ALJ did not properly explain the weight she Dr. Pierce's opinion.

Not only does the Court find that the ALJ specified adequate reasoning for the weight she assigned to Dr. Pierce's opinion, but the Court also notes that the ALJ did not even have to apply the 20 C.F.R. § 404.1527(d) factors to Dr. Pierce's determination that Plaintiff is incapable of even "low stress" jobs because this was not a "medical opinion" as defined by the Social Security Regulations. The Social Security Regulations explain that certain opinions of treating physicians are not "medical opinions" that the ALJ must weigh in accordance with the factors outlined in 20 C.F.R. § 404.1527(d). *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). *See* 20 C.F.R. § 404.1527(e). A determination that a claimant is "unable to work" is not a medical opinion. 20 C.F.R. § 404.1527(e)(1). A determination that a claimant is unable to work is a legal conclusion that the Social Security Regulations specifically reserve for the Commissioner. *Frank*, 326 F.3d at 620. Therefore, the ALJ did not have to apply the factors listed in 20 C.F.R. § 404.1527(d) in order to determine what weight to give Dr. Pierce's conclusion that Plaintiff is incapable of even "low stress" jobs because that is a legal conclusion reserved to the ALJ.

Plaintiff next argues that an "ALJ may not reject the opinion of a treating physician with respect to the plaintiff's mental functioning because that doctor is not a mental health specialist if the treating physician is providing treatment for the plaintiff's mental impairment, such as prescribing anti-depressant or other psychiatric medications." (*Pl.'s Br.* at 6) (citing *Lester v. Chater*, 69 F.3d 1453, 1466 (9th Cir. 1995).) In response, the Court first notes, as already discussed, that the ALJ did not reject Dr. Pierce's entire opinion. Second, the Social Security Regulations specifically authorize the ALJ to consider the specialization of the treating physician when deciding what weight to give his or her opinion. *See* 20 C.F.R. § 404.1527(d)(5). Accordingly, the Court finds that the ALJ did not err by taking into account Dr. Pierce's specialization when deciding not

13

to afford his opinion substantial weight.

**B.  Did the ALJ Improperly Impose Presumptive Mental Limitations upon Plaintiff?**

Plaintiff asserts that the ALJ erred by imposing the presumptive limitation of "low-stress" job upon Plaintiff's residual functional capacity.  (*Pl.'s Br.* at 6-7.)  Plaintiff argues that Social Security Ruling 85-15 states that "the ALJ may not assume that failure of a mental disorder to meet or equal a listed impairment equates with an ability to do unskilled work."  (*Id.* at 6.)  The ALJ found that, although Plaintiff suffers from severe depression,  Plaintiff's depression does not qualify as a listed impairment.  (*Tr.* at 18.)  The ALJ accounted for the effects of Plaintiff's depression on her ability to work by including  numerous restrictions in her residual functional capacity.  (*See id.* at 23.)  One of these restrictions is that Plaintiff must have a low-stress work environment.  (*Id.* at 23.)  Plaintiff argues that an ALJ must make "an individualized assessment of the plaintiff's ability to perform basic work-related activities" and cannot merely impose a generalized limitation of "low-stress" work.  (*Pl.'s Br.* at 8.)

Social Security Ruling 85-15 provides:

Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work.  The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis ) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routing work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

Social Security Ruling 85-16 elaborates upon how an ALJ should evaluate "the impact of a mental disorder on an individual's capacities" when determining the individual's residual functional capacity."  S.S.R. 85-16 at 1.  Social Security Ruling 85-16 directs an ALJ to consider history,

14

findings, and observations from medical sources; evidence of the individual's daily activities; the individual's ability to sustain activities, interests, and relate to others; and the individual's capability to function in a work-like environment.  *Id.* at 2.  Social Security Ruling 85-16 also indicates that an ALJ should consider the following factors when determining an individual's residual functional capacity:  the individual's ability to understand, carry out, and remember instructions; the individual's ability to respond appropriately to supervision; and the customary work pressures in a work setting.  *Id.* at 1.

The Court finds that the ALJ took the proper steps when she considered the impact of Plaintiff's mental limitations upon Plaintiff's ability to work.  The ALJ did not merely state that Plaintiff could perform "low-stress" work.  Instead, the ALJ considered Plaintiff's medical history and observations from both treating and examining physicians, questioned Plaintiff about her daily activities and whether she maintained any hobbies or interests, and discussed Plaintiff's interaction with other people.  (*Tr.* at 20, 21.)  Plaintiff's treating physician, Dr. Pierce, completed a medical assessment of Plaintiff's ability to do work-related activities, the purpose of which is to gauge the impact of Plaintiff's mental disorder upon her ability to function in a work environment.  (*See Tr.* at 298.)  In addition, the ALJ considered the factors outlined in Social Security Ruling 85-16, which is indicated by the restrictions in Plaintiff's residual functional capacity of requiring a sit/stand option, a temperature controlled work environment, a low stress work environment, no customer service, and simple, repetitive job instructions.  (*See id.* at 23.)  The ALJ also questioned a Vocational Expert about the specific jobs Plaintiff could perform, taking into account Plaintiff's limitations due to depression.  (*Id.* at 22.)  Because the ALJ went through these steps to determine Plaintiff's mental limitations due to her depression, the Court holds that the ALJ did not simply

15

impose a presumptive limitation of "low stress" work upon Plaintiff without making an indivualized inquiry into her precise mental limitations.  The Court, therefore, holds that the ALJ did not err by including in Plaintiff's residual functional capacity that Plaintiff is capable of "low-stress" work.

**C.  Did the ALJ Fail to Evaluate Plaintiff's Testimony in Accordance with the Regulations?**

The ALJ found that Plaintiff's "subjective complaints are exaggerated and not entirely credible to the extent contended."  (*Tr.* at 20.)  Specifically, the ALJ seems to reject Plaintiff's testimony that her physical pain prevents her from working and requires her to stay home during the day.  (*See id.*)  The ALJ determined that Plaintiff's noncompliance with the treatment regimen recommended by her doctors was the primary reason for her pain and that, with proper treatment, Plaintiff could work.  (*Id.* at 20-21.)

An ALJ should utilize a two-step process when assessing the subjective complaints of the claimant.  First, the ALJ should determine whether a medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms.  S.S.R. 96-7p at 2.  Second, the ALJ should evaluate the intensity, persistence, and limiting effects of the claimant's symptoms on his or her ability to work.  *Id.*  During this step, if objective medical evidence does not substantiate the claimant's testimony about the intensity, persistence, and limiting effects of his or her pain or symptoms, the ALJ must make a finding about the claimant's credibility.  *Id.*  When making this credibility finding, the ALJ should consider the entire case record and the factors enumerated in 20 C.F.R. § 404.1529(c)(3).

Plaintiff argues that the ALJ improperly determined that Plaintiff's subjective complaints were not credible.  (*Pl.'s Br.* at 9.)  Plaintiff states three reasons why the ALJ's determination was improper.  First, Plaintiff claims that the ALJ should have addressed whether Plaintiff has an

underlying physical or mental impairment which could reasonably be expected to produce the alleged symptoms. (*Id.*) Second, Plaintiff alleges that the ALJ improperly discredited Plaintiff's testimony based solely on the lack of objective medical evidence to substantiate the symptoms that Plaintiff alleged. (*Id.*) Third, Plaintiff argues that the ALJ should have considered the factors enumerated in 20 C.F.R. § 404.1529(c)(3) before discrediting Plaintiff's testimony. (*Id.*)

### 1. Underlying Physical or Mental Impairment

Plaintiff argues that the ALJ skipped the first step of assessing Plaintiff's subjective complaints, which is to identify whether a medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms. (*Pl.'s Br.* at 9.) Plaintiff does not explain why she perceives that the ALJ failed to make such a finding. The Court disagrees with Plaintiff because the ALJ specifically states "[i]nsofar as the claimant's medically determinable impairments may be reasonably expected to produce the symptoms alleged by the claimant," which indicates that the ALJ found Plaintiff's symptoms to be consistent with the impairments the ALJ had already determined exist - diabetes, depression, hypertension, and rotator cuff tendinitis. (*Tr.* at 19, 20.)

### 2. Lack of Objective Medical Evidence

Plaintiff next argues that the ALJ "improperly discredit[ed] [her] testimony based solely on the alleged lack of objective medical evidence to substantiate the symptoms alleged." (*Pl.'s Br.* at 9.) The Social Security Regulations provide that the ALJ "will not reject [the claimant's] statements about the intensity and persistence of [the claimant's] pain or other symptoms or about the effect [the claimant's] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. § 404.1529(c)(2).

The Court finds that the ALJ did not discredit Plaintiff's testimony because the ALJ found that the objective medical evidence did not substantiate her complaints. The ALJ never stated that the objective medical evidence does not substantiate Plaintiff's complaints. Instead, the ALJ discredited Plaintiff's testimony because the ALJ found that the primary factor influencing Plaintiff's pain was her non-compliance with the medication and treatment recommendations of her doctors. (*Tr.* at 20.) The ALJ found that if Plaintiff followed her doctors recommendations her pain would be reduced, which would decrease the effects Plaintiff's pain would have on her ability to work. (*Id.* at 20-21.) The ALJ indicated that Plaintiff testified that she did not consistently take medication prescribed by her doctors because she could not afford it. (*Id.* at 20.) However, the ALJ also explained that her treating doctor referred her to a prescription assistance program that she did not pursue. (*Id.*) Plaintiff's doctors also recommended that she reduce her daily calorie intake to 1800-2000 calories, which would help her lose weight and better control her blood sugar. (*Id.* at 20-21.) Plaintiff has not reduced her calorie intake or pursued the exercise regimen recommended by her doctors. (*Id.* at 21.) The ALJ indicated that Plaintiff's depression also improved with the treatment she received while she was in the hospital in December 2001. (*Id.*) Plaintiff, however, never again felt that her depression was severe enough to seek further treatment. (*Id.*) These factors influenced the ALJ's determination that Plaintiff's testimony that her pain prevented her from working was not credible. Thus, the ALJ did not discredit Plaintiff's testimony solely because the objective medical evidence did not substantiate her testimony but also because the ALJ found that Plaintiff's pain could be lessened or alleviated with proper treatment.

### 3. Factors to Assess Plaintiff's Credibility

Plaintiff next argues that the ALJ did not consider the factors enumerated in 20 C.F.R.

404.1529(c)(3) when evaluating the persistence, intensity, and limiting effects of Plaintiff's alleged symptoms. (*Pl.'s Br.* at 9.)  The Social Security Regulations state that the ALJ will consider the following seven factors when deciding the persistence and intensity of a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain and other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain and other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant has used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).

When considering a claimant's own testimony to determine the intensity and persistence of symptoms, the ALJ may not make a "single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" Social Security Ruling 96-7p at 2.  If an ALJ fails to explain the reasoning for his or her credibility determination, then substantial evidence does not support his or her decision. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam); *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

The ALJ did at some point in her decision address each of factors enumerated in 20 C.F.R. § 404.1529(c)(3) in narrative form. The ALJ discussed Plaintiff's daily activities. (*Id.* at 19) (stating that Plaintiff testified that she spends most of each day sleeping, her family helps her with housework and grooming, and she has occasional grocery store outings with her family and trips to the doctor.)  The ALJ outlined the symptoms of Plaintiff's diabetes, depression, and rotatory cuff tendinitis. (*See id.* at 18) (explaining that symptoms of Plaintiff's depression include lack of energy,

crying spells, decreased libido, and anxiety); (*id.* at 20) (enumerating the various physical pains felt by Plaintiff.) The ALJ addressed precipitating and aggravating factors when she discussed the Plaintiff's obesity and the possibility of reducing her symptoms by adhering to prescribed treatment and medication.  (*See id.* at 19-20.)  The ALJ stated that Plaintiff has taken medication for her depression in the past and discussed the medications Plaintiff takes for her diabetes, including the side effects. (*See id.* at 18, 20.)  The ALJ discussed the treatment Plaintiff's doctors recommended for her and the treatment she received in the past.  (*See id.* at 18, 20-21.)  The ALJ also indicated what Plaintiff does personally to alleviate her pain.  (*See id.* at 20.)

In addition to discussing the 20 C.F.R. § 404.1529(c)(3) factors in narrative form, the ALJ stated that she considered Plaintiff's allegations, the objective evidence, and the objective findings when determining the intensity and persistence of Plaintiff's symptoms.  (*Id.* at 20.)  The ALJ also cited Social Security Ruling 96-7p, which directs an ALJ of the steps to take when considering pain and its effects on the residual functional capacity.  *See* Social Security Ruling 96-7p.  Social Security Ruling 96-7p also explicitly references the seven factors outlined in 20 C.F.R. § 404.1529(c)(3) and directs the ALJ to consider these factors when assessing the credibility of an individual's statements. *Id.* at 3.  Because the ALJ discussed all of the 20 C.F.R. § 404.1529(c)(3) factors at some point in her decision, the issue is whether the ALJ committed reversible error by not explicitly referencing each factor when she assessed the credibility of Plaintiff's testimony.

In *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994), the United States Court of Appeals for the Fifth Circuit addressed the issue of what an ALJ must do to fulfill the obligation of making "affirmative findings regarding a claimant's subjective complaints."  *Id.* at 163.  The court rejected the argument that "an ALJ must articulate specifically the evidence that supported his [or her]

decision and discuss the evidence that was rejected." *Id.* The court concluded that an ALJ must articulate a reason for his or her credibility determination but that the fact that ALJ does not "follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure." *Id.* At 164.

The Court interprets the holding in *Falco*, 27 F.3d 160, to support a finding that an ALJ does not have to specifically reference each factor outlined in 20 C.F.R. § 404.1529(c)(3).[1] At some point in her decision, the ALJ mentioned every piece of evidence that the factors listed in 20 C.F.R. § 404.1529(c)(3) require an ALJ to consider, and the ALJ stated that she considered all the objective evidence in the record when determining the intensity and persistence of Plaintiff's pain. Accordingly, the Court finds that the ALJ provided adequate support for her credibility determination, even though she did not explicitly reference each 20 C.F.R. § 404.1529(c)(3) factor. The Court, therefore, overrules Plaintiff's objection to the ALJ's decision on this ground.

## CONCLUSION

Because the Court rejects all of Plaintiff's grounds for finding that the ALJ's determination of Plaintiff's residual functional capacity is not supported by substantial evidence and that the ALJ did not apply the correct legal standards, the Court **AFFIRMS** the decision of the Commissioner to deny Plaintiff benefits.

**SIGNED** this 22nd day of February, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[1] In an unpublished decision, the United States District Court for the Eastern District of Texas held that "regarding factors required by § 404.1529(c)(3), neither the regulation nor interpretive case law requires that an ALJ name, enumerate and discuss each factor in outline or other rigid, mechanical form." *Bodin v. Barnhart*, 2004 WL 3237480 (E.D. Tex. Aug. 11, 2004).